SHIRLEY S. ABRAHAMSON, C.J.
¶ 59. {concurring). The United States Supreme Court has not yet defined the contours of the limitations imposed by the *692 Confrontation Clause on forensic evidence and expert testimony. The fractured decisions of the Court in this field may be an omen of changes to come in Confrontation Clause jurisprudence.[1]
¶ 60. In the meantime, however, federal and state courts must determine how the Confrontation Clause applies to forensic evidence and expert testimony.[2] At present, federal and state cases are all over the map in their attempts to apply the Court's Confrontation Clause decisions.
¶ 61. As courts develop and apply this evolving body of law, the "ultimate goal" of the Confrontation Clause must be remembered: To ensure that the reliability of evidence is "assessed in a particular manner," namely "by testing in the crucible of cross-examination."[3] The majority opinion seems to lose sight of this goal. I write separately to bring the goal of the Confrontation Clause back into focus.
¶ 62. In Crawford v. Washington, 541 U.S. 36, 61 (2004), the United States Supreme Court declared that *693 the Confrontation Clause bars the introduction of out-of-court testimonial statements unless the declarant is unavailable for trial and the declarant has previously been cross-examined by the defendant. The application of this fundamental Confrontation Clause principle in the context of forensic evidence and expert testimony has been the subject of much debate and litigation in state and federal courts.
¶ 63. In Wisconsin, a forensic report regarding a particular defendant that is created for prosecutorial purposes is considered an out-of-court testimonial statement.[4] It is clear under Crawford that such a report cannot be introduced into evidence without testimony from the analyst who prepared it unless the analyst is unavailable and was previously cross-examined by the defendant.
¶ 64. Ambiguity remains regarding the precise circumstances under which the Confrontation Clause permits the introduction of substitute expert testimony about forensic test results when the forensic report itself is not introduced.
¶ 65. In State v. Williams, 2002 WI 58, 253 Wis. 2d 99, 644 N.W.2d 919, this court established that the Confrontation Clause does not allow the State to call a surrogate expert to the witness stand simply to have the expert read or summarize a forensic report authored by someone else. The court held that "one expert cannot act as a mere conduit for the opinion of another" without violating the defendant's constitutional right to confront the State's witnesses.[5]
*694 ¶ 66. Similarly, in Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011), in which the certified results of a blood alcohol test were introduced with testimony from "a scientist who did not sign the certification or perform or observe the test reported in the certification," the United States Supreme Court "bluntly held that such 'surrogate' expert testimony violates the confrontation right. The accused's right is to confront the lab analyst who performed the test, unless the state can show that [the lab analyst] is unavailable and that [the] defendant had an opportunity pretrial to cross-examine him."[6]
¶ 67. In the present case, the State obtained a testimonial forensic report that concludes the defendant's blood alcohol content was 0.152 percent. The analyst who prepared the forensic report was unavailable for trial. The analyst had not, however, been cross-examined by the defendant previously. Thus, the forensic report itself could not be introduced.
¶ 68. The State did not introduce the forensic report. Instead, the State called Patrick Harding, an employee in the same laboratory in which the forensic analysis was conducted, as a substitute expert witness to testify in lieu of the analyst who prepared the report.
¶ 69. Harding had no personal connection with the forensic report at issue. He had not observed the defendant's blood sample and had not participated in its testing. Harding nevertheless testified about the subject matter of the forensic report and testified that in his opinion, the defendant's blood alcohol content was 0.152 percent.
*695 ¶ 70. The majority opinion distinguishes the instant case from prior United States Supreme Court cases in which the Confrontation Clause was held to have been violated on the ground that the State in the instant case did not introduce an out-of-court testimonial statement. According to the majority opinion, although Harding's opinion was based on the analyst's out-of-court testimonial statement, it nevertheless qualifies as independent.
¶ 71. Crawford does not govern the introduction of testimony based on an out-of-court testimonial statement; it governs the introduction of the out-of-court testimonial statement itself. Thus, the majority opinion reasons, there was no Confrontation Clause violation in the instant case.
¶ 72. I disagree with the majority opinion's analysis. It is a stretch, in my view, to call Harding's opinion independent. I conclude that Harding served as a conduit for the opinion of the analyst who performed the forensic testing at issue. In my opinion, the analyst's out-of-court testimonial statement was introduced — albeit indirectly — through Harding's testimony.
¶ 73. Under a strict reading of Crawford, Harding's testimony violated the defendant's Confrontation Clause rights because the analyst whose out-of-court testimonial statement Harding indirectly introduced had not previously been cross-examined by the defendant. I conclude, however, that such a narrow reading of Crawford and its progeny improperly ignores the values underlying the Confrontation Clause and the practical realities the State and the courts face in cases that rely on forensic evidence. It also fails to take into account the reliability of forensic evidence and fails to *696 give proper weight to the goal of enabling the State to prosecute a crime when a fair trial is possible.
¶ 74. In my opinion, courts should search for fair, practical, and workable evidentiary rules and should not deem the Confrontation Clause violated whenever the prosecution fails to call to the witness stand all whose testimony may be relevant to the accuracy of the forensic testing at issue in a particular case.
¶ 75. Keeping the majority, plurality, and minority writings of the justices of the United States Supreme Court in Crawford and its progeny in mind, and seeking the best interpretation of the law available in light of the authorities binding upon this court, I conclude that the substitute expert testimony at issue in the instant case satisfies the Confrontation Clause.
I
¶ 76. I begin by examining the majority opinion's determination that Harding testified to an independent opinion and was not merely a conduit for the opinion of the analyst who performed the forensic testing at issue.[7]
¶ 77. State v. Williams, 644 N.W.2d 919, ¶¶ 25-26, 253 Wis. 2d 99, 644 N.W.2d 919, held that an expert witness other than the analyst who performed the forensic testing at issue can testify to "an independent expert opinion" without violating the Confrontation Clause, even when that opinion is based in part "on facts and data gathered by someone else." Whether the opinion provided by such a substitute expert witness is an independent one must be determined on a case-by-case basis.
*697 ¶ 78. Independence is a question of degree. Williams does not reveal the precise degree of independent judgment that must undergird an expert's opinion for a court to characterize the opinion as independent for Confrontation Clause purposes.
¶ 79. It is clear, however, that for purposes of the Confrontation Clause, a substitute expert witness must do more than merely recite or summarize the work of another.[8] Consequently, the fact that the forensic report itself was not introduced in the present case is not dispositive. "The question is not whether [the forensic report] is disclosed in documentary form, or orally recapitulated by a testifying expert. Rather, the appropriate question is whether the substance of the testimonial materials is shared with the fact-finder to suggest its truth, without the report's author being available for cross-examination."[9]
¶ 80. In the present case, Harding testified that he was offering an independent opinion. Harding's characterization of his testimony is not binding on the court and is not supported by the record.
¶ 81. Harding stated at trial that he reviewed the analyst's "report when it went out and that is the chromatograms and the paperwork associated with the whole analytical run that [the analyst] did."
¶ 82. Harding was familiar with the policies and procedures of the laboratory in which the forensic analysis took place. He testified that all indications were that standard laboratory procedures were followed and that the chromatograph machine was properly calibrated.
*698 ¶ 83. Harding did not, however, have any firsthand knowledge that the procedures were followed in the present case. Harding was unable to testify about the handling of the defendant's blood sample or the steps that preceded the chromatograph machine's analysis of that sample. Harding had no knowledge of the labeling or loading of the defendant's blood sample and had no knowledge of the sample's appearance or odor upon arrival at the laboratory. Harding made no direct observations of the sample or its testing. Harding could not testify about whether there was human error in the process of testing the defendant's blood sample.
¶ 84. In sum, Harding was unable to say whether the blood sample was received intact or whether the blood alcohol content testing was performed according to protocol. "These are the kinds of facts that mattered to the Bullcoming Court."[10]
¶ 85. Harding's only basis for determining the defendant's blood alcohol content was the analyst's report and supporting documentation. Harding did not, and could not, offer any different or additional analysis beyond that contained in the forensic report and attached materials. Harding had no greater connection with the specific forensic testing at issue than any other qualified forensic analyst from Harding's lab would have had.
¶ 86. The documents and information Harding reviewed were not, in my view, sufficient to enable Harding to independently "understand, interpret, and evaluate the [forensic test] results."[11] I conclude that for purposes of the Confrontation Clause, Harding *699 lacked sufficient information to provide an independent opinion about the defendant's blood alcohol content. Harding was, in essence, a conduit through which the State entered another analyst's otherwise inadmissible opinion into evidence.
¶ 87. My position that Harding failed to provide an independent opinion is supported by the United States Supreme Court's reasoning in Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011), and Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).
¶ 88. In Bullcoming, the United States Supreme Court debunked the notion that an analyst who performs a blood alcohol content test is a "mere scrivener," cross-examination of whom serves no legitimate purpose. Bullcoming makes clear that the analyst who tested the defendant's blood sample has valuable information about the test results beyond the information set forth in the materials produced by the gas chromatograph machine. Thus, the opportunity to cross-examine the analyst is important.
¶ 89. The Bullcoming Court explained that "[s]everal steps are involved in the gas chromatograph process, and human error can occur at each step."[12] According to the Court, the results produced by the gas chromatograph process are determined in part by "past events and human actions," which are not "revealed in raw, machine-produced data," and which constitute "me[a]t for cross-examination."[13]
¶ 90. In other words, according to the Bullcoming Court, an analyst's testifying and submitting to cross-examination at trial are not hollow formalities. *700 The Court recognized that a substitute expert witness cannot convey all that the analyst who performed the forensic testing knows or observed and cannot expose any lapses on the analyst's part.[14] Thus, the analyst should be subject to confrontation even "if all analysts always possessed the scientific acumen of Mme. Curie and the veracity of Mother Theresa."[15]
¶ 91. Similarly, Melendez-Diaz stresses that a substitute expert witness who testifies based solely on the results of the gas chromatograph process will have little to no knowledge of the past events and human actions that helped determine those results. As a result, cross-examination of the substitute expert witness cannot effectively uncover mistakes or misconduct by the analyst, which can render the results of the gas chromatograph process unreliable.
¶ 92. In Melendez-Diaz, the Court acknowledged that "[fjorensic evidence is not uniquely immune from the risk of manipulation."[16] Mistake or misconduct can influence forensic test results.[17] "A forensic analyst responding to a request from a law enforcement official may feel pressure — or have an incentive — to alter the evidence in a manner favorable to the prosecution."[18]
¶ 93. Harding appears to have recognized the dangers posed by admitting his testimony in lieu of *701 testimony by the analyst who performed the forensic testing in question. On cross-examination, defense counsel asked Harding whether the analyst who tested the defendant's blood sample could have tampered with the sample had she "had a mind to do it." Harding responded: "[I]f an analyst wanted to do something nefarious, sure, that's correct, that could happen." Defense counsel then asked whether an analyst's tampering with a blood sample "could possibly escape your detection when you review the written reports and materials." Harding replied: "Sure."
¶ 94. This colloquy demonstrates the inherent limits to what an expert can know about gas chromatography testing performed by someone else. Because of these limits, a substitute expert witness can do little more than summarize the work and parrot the findings of the analyst who performed the testing. Harding was no different; he summarized the work and parroted the findings of the analyst who performed the forensic testing at issue.
¶ 95. In sum, a careful reading of case law and of Harding's testimony reveals that Harding was unable to testify about the gas chromatograph process at issue other than by relying on, and disclosing the substance of, materials generated by another analyst's use of the gas chromatograph machine.
¶ 96. The State called Harding as a witness in order to introduce the otherwise inadmissible conclusion of a testimonial forensic report prepared by someone else. Harding could not provide insight into the testing process other than by disclosing the substance of the report itself. Under the circumstances of the present case, Harding did not provide an independent opinion. The values underlying the Confrontation *702 Clause would be better protected by testimony from, and cross-examination of, the analyst who prepared the report.
II
¶ 97. In my view, a defendant's Confrontation Clause rights must be balanced against the practical reality that cross-examining the forensic analyst who performed the testing at issue will not always be possible or necessary. Courts should not — and need not under current United States Supreme Court precedent —exclude forensic evidence that has indicia of reliability when the analyst who performed the testing is unavailable but a substitute expert witness is available to provide useful and significant information about that evidence and to submit to cross-examination.[19]
¶ 98. Thus, although I conclude that Harding's testimony indirectly introduced an out-of-court testimonial statement made by an unavailable analyst who had not previously been cross-examined, and although I conclude that the Confrontation Clause would be better protected by testimony from, and cross-examination of, the analyst who conducted the forensic testing at issue, my analysis does not end there.
¶ 99. As Justice Kennedy's dissent in Bullcoming explains, the United States Supreme Court lacks the experience and familiarity with state trial processes *703 necessary to make it well-suited for the role of a national tribunal for rules of evidence.[20] Accordingly, this court should contribute to the development of evidentiary rules that pay heed to the constitutional and practical concerns of state courts, the State, and defendants. The instant case presents the court with the opportunity to do just that.
¶ 100. When an analyst becomes unavailable without first submitting to cross-examination by the subject of the analyst's forensic testing, what happens to the results produced by that testing? If Crawford imposes a rigid, wholesale ban on non-independent substitute expert testimony about forensic test results when an unavailable forensic analyst has not previously been cross-examined, how could the results be introduced? In short, they could not.
¶ 101. It seems to me, however, that Crawford does not dictate such rigidity. I reach this conclusion based on Crawford itself (which recognizes that the opportunity to cross-examine a witness at trial is not always possible or necessary[21]) and on Crawford's progeny.
¶ 102. The separate writings issued in Bullcoming are particularly instructive.
¶ 103. Justice Sotomayor's concurrence in Bull-coming makes clear that the Court "would face a different question [than faced in Bullcoming and prior cases] if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not *704 themselves admitted as evidence."[22] That is the very question presented in the instant case.[23]
¶ 104. Justice Sotomayor emphasized that Bull-coming should be read narrowly. Justice Sotomayor wrote that Bullcoming and prior cases would not control future cases in which "the person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue."[24]
¶ 105. Justice Sotomayor did not explain the level of involvement a substitute witness must have with the "scientific test at issue" to render the witness's testimony permissible under the Confrontation Clause. However, the implication of Justice Sotomay- or's Bullcoming concurrence is that if a substitute expert witness testifies who has even a limited connection to the testing at issue, there might not be any Confrontation Clause violation:
[In Bullcoming, the analyst] conceded on cross-examination that he played no role in producing the BAC report and did not observe any portion ... of the testing.... It would be a different case if, for example, a supervisor who observed an analyst conducting a *705 test testified about the result or a report about such results. We need not address what degree of involvement is sufficient because here [the analyst] had no involvement whatsoever in the relevant teat and report.[25]
¶ 106. The four dissenting justices in Bullcoming objected to the Bullcoming majority's extension of Melendez-Diaz. According to the dissenters, Melendez-Diaz does not prohibit the introduction of a testimonial forensic report when a knowledgeable representative of a laboratory is "present to testify and to explain the lab's processes and the details of the report."[26] Nor, in the dissenters' view, does the Confrontation Clause.
¶ 107. The dissent reasons that a blood alcohol content analysis "is mechanically performed by the gas chromatograph, which may operate . . . after all the laboratory employees leave for the day."[27] Under these circumstances, the dissent concludes, the introduction of a forensic report along with the testimony of a knowledgeable laboratory representative who is available for cross-examination is "fully consistent with the Confrontation Clause and with well-established principles for ensuring that criminal trials are conducted in full accord with requirements of fairness and reliability and with the confrontation guarantee."[28]
¶ 108. Keeping these and other post -Crawford writings of the justices of the United States Supreme Court in mind, and seeking the best interpretation of the law available in light of the authorities binding *706 upon this court, I conclude that the substitute expert testimony at issue in the instant case satisfies the Confrontation Clause.
¶ 109. More specifically, I conclude that in the instant case, cross-examination of a substitute expert witness who fails to provide an independent opinion constitutes a permissible alternative to cross-examination of the analyst who performed the forensic testing at issue when the following conditions are met:
1. The analyst is unavailable for cross-examination, through no fault of the parties;
2. Re-testing is not possible;
3. The analyst recorded the forensic test results at or near the time of testing in the course of a regularly conducted activity and would be unlikely to have an independent memory of the test performed (because, for example, the analyst processed many such tests within a short period);
4. The analyst recorded the results in a way that another expert in the field could understand and interpret; and
5. The substitute expert witness is qualified to discuss and interpret the original results and is subject to cross-examination.
¶ 110. Because these conditions appear to have been met in the present case, I conclude that Harding's substitute expert testimony fulfills the minimum requirements of the Confrontation Clause. Thus, like the majority opinion, I would allow it.
¶ 111. I note, finally, that in determining that Harding's testimony is permissible under the Confrontation Clause, I am cognizant of "the fundamental *707 doctrinal dilemma" underlying the relationship between the Confrontation Clause and forensic evidence:
[T]here is a fundamental mismatch between the Confrontation Clause's focus on the individual testifying expert and the nature of scientific knowledge production, which is, more often than not, a collective rather than an individual enterprise. Science often depends on a certain degree of epistemic deference to the conclusions and findings of others . . . and scientists are often engaged in "distributed cognition" in which [] the knowledge relevant to a [particular] question . . . stretches across a network of humans and machines. . . . [W]hen a witness uses only a modicum of independent judgment to evaluate and opine on tests done by others, this problem of distributed knowledge and the Confrontation Clause rears its head.[29]
¶ 112. For the reasons set forth, I write separately.
¶ 113. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 See, for example, Williams v. Illinois, 132 S. Ct. 2221 (2012), in which four opinions were filed but none received a majority vote. "The persistent ambiguities in the Court's approach are symptomatic of a rule not amenable to sensible applications." Bullcoming v. New Mexico, 131 S. Ct. 2705, 2726 (2011) (Kennedy, J., dissenting). See also People v. Lopez, 286 P.3d 469, 483 (Cal. 2013) (Liu, J., dissenting) ("Given the array of possible doctrinal approaches left open by Williams, one can only surmise that the high court will soon weigh in again.").

 See State v. Deadwiller, 2013 WI 75, ¶ 47, 350 Wis. 2d 138, 834 N.W.2d 362 (Abrahamson, C.J., concurring) ("[T]he majority opinion does not help answer the recurring significant central constitutional/evidentiary question presented, namely, 'How does the Confrontation Clause apply to the panoply of crime laboratory reports and underlying technical statements written by (or otherwise made by) laboratory technicians?'").

 Crawford v. Washington, 541 U.S. 36, 61 (2004).

 State v. Williams, 2002 WI 58, ¶¶ 48-49, 253 Wis. 2d 99, 644 N.W.2d 919.

 Id., ¶ 19.

 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 802.303, at 142 (3d ed., 2014 Pocket Part).

 See majority op., ¶¶ 3, 46-47, 52, 55-57.

 Williams, 253 Wis. 2d 99, ¶ 19.

 David H. Kaye et al., The New Wigmore: Expert Evidence, § 4.10.2, at 200 (2d ed. 2010).

 Kaye et al., supra note 9, § 4.12.4, at 69 (Cumulative Supp. 2015).

 Kaye et al., supra note 9, § 4.10.2, at 205.

 Bullcoming, 131 S. Ct. at 2711.

 Id. at 2714. By contrast, the dissent in Bullcoming emphasized the mechanical nature of the gas chromatograph. See Bullcoming, 131 S. Ct. at 2724 (Kennedy, J., dissenting).

 Bullcoming, 131 S.Ct. at 2715-16.

 Melendez-Diaz, 557 U.S. 305, 319 n.6 (2009). See also Bullcoming, 131 S. Ct. at 2715.

 Melendez-Diaz, 557 U.S. at 318.

 Indeed, according to an amicus brief submitted in the instant case by the Innocence Network, "[u]nvalidated or improper forensic science is a leading cause of wrongful convictions, playing a role in the cases of almost half of the 321 wrongfully convicted people in the United States who have been exonerated by DNA testing."

 Melendez-Diaz, 557 U.S. at 318.

 "Thus, when there is both unavailability and a meaningful but imperfect substitute for contemporaneous cross-examination, the Constitution, according to Crawford, does not require wholesale exclusion... . [N]ecessity ought to permit a second-best solution." Kaye et al., supra note 9, § 4.12.2, at 66-67 (Cumulative Supp. 2015).

 Bullcoming, 131 S. Ct. at 2727 (Kennedy, J., dissenting).

 Under Crawford, a prior opportunity to cross-examine an unavailable witness provides a constitutionally adequate alternative to cross-examination of the witness at trial.

 Bullcoming, 131 S. Ct. at 2722 (Sotomayor, J., concurring).

 Justice Sotomayor discusses Federal Rule of Evidence 703, explaining that facts and data upon which experts in a given field would reasonably rely in forming an opinion need not be admissible in order for an expert opinion based on such facts and data to be admitted. There is, however, an argument to be made that despite Rule 703, evidence that is excluded from trial on constitutional grounds ought not to be permitted to serve as part of the basis for an expert's conclusion. See Kaye et al., supra note 9, § 4.5, at 158.

 Bullcoming, 131 S. Ct. at 2722 (Sotomayor, J., concurring).

 Id

 Id. at 2723 (Kennedy, J., dissenting).

 Id. at 2724 (Kennedy, J., dissenting).

 Id. at 2723 (Kennedy, J., dissenting).

 Kaye et al., supra note 9, § 4.12.11, at 100 (Cumulative Supp. 2015) (footnotes omitted).